Our final case, fourth case, that's it. So Settle v. Collier, Ms. Sharbrooke. I'm Alyssa Yarbrough, and I am here today on behalf of the appellant, Deputy David Collier, in this matter. Your Honors, this is a case of first impression because there are no cases which are factually similar to the case that Deputy Collier faced on the night of November 14th, 2020. When Deputy Collier approached the residence, he was there, lawfully, executing a legal duty, dressed in his uniform, carrying his maglite. It was 940 at night. When he approached the front door, it was barricaded, they knocked, the dog barked, no one responded. Deputy Hart walked around the side of the residence to the back door. Deputy Collier went around the other way to the residence. There are photographs from the scene that show that the backyard of the house was completely enclosed but for a gate area where vehicles could pull in and out. But it was one way in, one way out. When Deputy Collier walked around that way, he saw the vehicle. But because it was so dark, there were no lights in the back, it was 940 at night, he went back around, met with Deputy Hart, and they made the decision to approach the backyard to see if Jacob Settle and Sofronia Whitehead were inside of the truck. They had flashlights. They did have flashlights, Your Honor, and they were using those flashlights, and this Whitehead even testified she saw the flashlights and that they were actively hiding because they both knew they had warrants for their arrest. When Deputy Collier approached the vehicle... One of the things that the deputy would have seen, too, was that the yard was effectively an obstacle course. Yes, Your Honor. For lack of a better term, there was debris. Ms. Whitehead testified that she was a scrapper by occupation and the yard was filled with debris, and that debris was mostly located near the enclosed porch in the house and on that driver's side where Deputy Collier approached. When Deputy Collier approached and Deputy Hart approached from the passenger side, they found their flashlights inside of the vehicle, and they observed Mr. Settle and Mrs. Whitehead leaning over the center console of the truck, attempting to conceal themselves. Deputy Collier testified... Let's be very clear. I don't mind you referencing Collier's testimony, but let's try to grant every inference in favor of the non-movement here in terms of what the facts are. Yes, Your Honor. Refer to only undisputed facts, or the facts that the evidence would establish in the non-movement's  Yes, Your Honor. I believe that based on the analysis that must be performed under the Fourth Amendment reasonable analysis, Deputy Collier's perception of what he was witnessing comes into play in that analysis, even in the light most favorable to the plaintiff and their version of events. Yes, but it's an object of inquiry. That's not a subject of inquiry, right? We have to look at those undisputed facts, but we look at how a reasonable officer would have perceived that situation, right? Correct, Your Honor, and I would submit that this goes to what a reasonable officer would have assumed based on what he was approaching and how Deputy Collier testified, and that is that they were attempting to either hide, or based on his history, which Deputy Collier knew before he approached the residence to serve the search warrants, was that Mr. Settle had previously been arrested for possession of methamphetamine and was known to use methamphetamine, so the perception that he was potentially overdosing and or hiding was something that is undisputed, and this Whitehead testified that they were, in fact, attempting to hide from law enforcement officers. But deadly force, you're not arguing that deadly force was reasonable before the car, the truck, was turned on, right? Before the truck was turned on, no, Your Honor, and that's not the facts that we have. Right, no, I'm just, so it wasn't reasonable. And it was placed in gear, right? It was placed in gear, and in fact, an admission was made by the plaintiff that not only was it placed in gear, but in the complaint, in paragraphs 45 and 47, the plaintiff admitted that Mr. Settle cranked the truck after the law enforcement officers knocked on the window, made lawful commands, and then in paragraph 47, stated that he not only put the truck in reverse, but he also put it in drive. And Mrs. Whitehead testified that had the truck been put in drive, because her testimony obviously later changed that it was put into potentially a gear, but had the truck been put into drive, it would have moved. And there's no dispute. There's even photographic evidence that the gear shift was down in the drive position after the shots by Deputy Collier were fired. And what Deputy Collier faced that is also undisputed is that he was, whether the truck moved and or could have hit him, he was barricaded in by the house, the porch. Yeah, the problem that we have is we've never had a case where the car hadn't moved. We have lots of cases where officers fire weapons at cars, where the car, we recognize a car is a weapon that poses an extreme danger to an officer, and we have cases where really almost the slightest movement has warranted the use of force by the officer. I don't think we have one where, though, if we look at the evidence in the light most favorable to the plaintiff, where the estate, that the, where the car hasn't moved, that we said that it justified firing a weapon. I'm not saying that that doesn't, that that forecloses qualified immunity here. But am I right about that? You are correct about that, Your Honor. There is no 11th Circuit precedent or Supreme Court precedent that has ever issued a ruling regarding whether or not the vehicle moved. There's also not a case wherein an officer approaches a vehicle that is off and the driver cranks the vehicle and makes movements to make the vehicle move, puts it in reverse, puts it in drive, where the officer is trapped in an enclosed space with no reasonable method of escape. All right. So I don't know about move. Puts it in gear. It seems to me on this record, it's undisputed that he cranked the engine. It's undisputed that it was placed in gear. I think it is disputed that it moved. And even if it is disputed that it's moved and that's the position that this court takes. No. Is it disputed that it moved? Is that, I mean, that's also my read of the record, so I just want to be clear about that. The appellant would submit no. And I would submit no because Sephronia Whitehead in the video mere moments after the shooting happened and what her statement that this court can listen to . . . I've listened to it. And she said, why did he drive?  Correct, Your Honor. And why did he move the stupid truck? He shouldn't have done that. I told him they were going to kill him. Those are all statements that she made mere moments after the incident. So for purposes of the argument, I submit that it is not disputed. Yeah, but her testimony, right, is that it didn't move before the firing, right? That is what she says today. If we . . . well, we have to credit, we have to view that evidence in the light most favorable to the plaintiff. It seems to me that you can hear her statements after the fact in the recording and it's equivocal whether she thinks that moving happened before or after the firing. She may think that that may support an inference, may even compel an inference that the car moved. It doesn't tell us when it moved. Correct, Your Honor. And that's where the appellant submits that it doesn't matter for purposes of the analysis because this is such a novel issue on whether or not the vehicle moved. Taken in light, most favorable to the plaintiff, but from the perspective of a reasonable officer on scene, we are dealing with mere seconds that all of this unfolded. So the fear that it might move supported the deadly force? Correct, Your Honor. And the fear that it might move because Mr. Settle made motions, he put the car in drive, he put the car in reverse, all of those are admitted to by . . . Yeah, so your position is that those facts, it's a totality of the circumstances inquiry Fourth Amendment. Correct, Your Honor. And those are escalatory acts by the deceased, right? So it's not like the cases where the vehicle's coming to a stop or it's just come to, it's slowing down and the officer fires. This is the opposite. What this plaintiff is doing, what this deceased is doing is raising the stakes, is escalating the situation. Correct, Your Honor. And I see I'm out of time. So in a different hypothetical, if the scenario had unfolded just as you had described, but the car was not put in gear. The car was off when the officers approached, and then the car was turned on, which is a loud noise from what I understand. I think catalytic converter had been stolen, so it's a very loud noise. We don't have to decide in this case, because we do have a situation where the car was put in gear, we don't have to decide whether deadly force was reasonable simply upon the turning on of the car, right? We look at the entirety of all of this. That is correct, Your Honor. And that's why the totality of the circumstances and the perspective of the reasonable officer matter in this situation. Because it was undisputedly cranked and then put into gear, thus making it more likely that it would become a deadly weapon as opposed to a yarn ornament. But we can say for another occasion whether simply turning on the car, one officer's approach, would justify the use of deadly force. Correct, Your Honor. Okay. I think we understand you've saved five minutes. Let's hear from Ms. Richardson. May it please the court, Jennifer Shoff Richardson here on behalf of Apo Lee, Ms. Kimberly Settle as personal representative of Jake Settle. As the court knows, we have an unarmed man who's shot in a stationary vehicle while the officer had no reason to believe that that man would place anyone's safety in danger. My question is, can you say that someone is unarmed when they are in control of a vehicle? I would concede that a vehicle can be a deadly weapon. I mean, yeah. We have plenty of cases that say that, right? So in a real sense, he is armed, right? He has a dangerous weapon in his control. Yes, Your Honor. And I would say . . . Let me ask you this. Yes. You're the officer trying to execute a warrant and there's a gun on the table and the person to be arrested reaches for the gun, reaches to control the deadly weapon. The officer gets to shoot. I would say the officer, if at all possible, should say, do not reach for the gun. Right. Okay. There should be a warning. That is consistent.  Let's say that this is rapid, it's dark, but the officer sees that there is a weapon and sees the person to be arrested move toward it. Does he have to wait and hope for the best? I would say if he's directly in the path of the weapon, then he may act. Is that not this case? It is hotly disputed whether the officer was directly in the path of this truck, right? You don't have to . . .  Now, we have cases about that, right? Officers don't have to calculate trajectories and do geometry when they're in the presence of a vehicle like this. This is my problem with this case. The deceased here was escalating the situation by not only starting the vehicle, which our case law says is a deadly weapon, but then by putting it in gear. To me, it's not only the equivalent of the person to be arrested reaching for a gun. It's actually grabbing it and cocking it. Why isn't it that situation? I will say, based on these facts, the actual setup of the yard makes it a bit different. Okay. That being indirectly to the side is very different in this situation. But he's also got a fellow officer with him, right?  Who's in that backyard, right? Correct. He doesn't know where this vehicle . . . I mean, it is reasonable for the officer to assume that the deceased's next move is to move the car, right? That would be the reasonable inference that an officer could draw. In fact, Deputy Collier said, I knew if he just reversed out of the yard, I could not shoot him, right? He would just be a fleeing felon, like Garner. He didn't say that part, but it was clear he knew reverse didn't equal a threat to him. Sure, but he doesn't know which way it's going to go. I mean, he doesn't know that it's necessarily going to go backwards and only backwards. He knows that the next move is that it's going somewhere. Right, but this truck in particular . . . Not only in his path, but in the path of his partner, who's also back there. They're in a backyard. It's dark. As I understand the facts here, the lights of the truck don't come on, right? I think that is correct, but the truck could not really move forward. And there's like an air conditioning unit or something back there. I mean, this is . . . it's like an obstacle course for these two officers. I mean, it's dark, it's night, and depending on what direction they move in to make sure that they're going to be safe if this vehicle moves, they could be tripping over something, which would place them in an even more precarious situation. I mean, I've looked at the record. I mean, this is a minefield. I wish I had the . . . please make sure to look at the photo of the yard, but in this particular instance, the truck . . . well, you know, our position is the truck did not move. Their expert agrees there's no evidence that this truck moved. He looked at the grass and the weeds and the bushes. I'm with you on that. That's the next thing that's going to happen. There is an air conditioning. It's going to move. That's next. Well, so it can't really go forward. There's a house, right, and the officer isn't in front of the truck. And then there's an air conditioning unit, a big air conditioning unit to the left. The truck isn't going to go over the air conditioning unit. How do we know that? I don't think that's reasonable. How do we know that? I mean, how do we know that? I think any reasonable officer would know that a truck can't go over a big air conditioning . . . But isn't the better . . . perhaps another response is we don't know, which is why this is for a jury. I love that response. Yes. Thank you, Judge, for the rescue. So I was going to ask you, if you think the facts as we know it, which the facts being officers entered a dark backyard, the truck was off, they approached the truck. Your client turns on the truck and puts the truck into gear. I'm conceding the truck doesn't move. I was going to ask you, what would . . . if your client had done what thing, what would that have made . . . what fact would have made deadly force reasonable? And I was going to ask you, what if the truck moved? But it sounds like you're saying, even if the truck were to have moved, that still wouldn't have justified the use of deadly force. Am I correct? Correct. I mean, you have cases where cars moved, but it wasn't justified. So your argument would have been that the officers . . . if the truck started to move, perhaps rapidly, the officers . . . that was still not enough. The officers were going to have to assess, was your client simply reversing without cranking the wheel, causing the front of the truck to go one way or the other? If he's on a straight path backward, the officers had to assess that to see if he was fleeing. I do think the difficulty is, this isn't an open road where a car chase is going on, where the car can rapidly go forward, backward, sideways, anywhere, right? Under these facts, the reasonable officer is looking at this yard full of junk, where he can't even walk. He can get pinned by a truck that rapidly cranks the wheel and floors it. I would say that is . . . How is that not a legitimate fear of the officer? I would just say that is a disputed issue of material fact. Where he was is very disputed, right? We have expert testimony . . . No matter where he is, if the . . . you're acting like the only choices are the truck moves forward, which he can't do, or it moves backwards to flee. Those aren't the only options. A truck can crank the wheel in one direction, and the front of the truck can hit an officer. It is possible. It does depend on the actual environment of the yard, though. Also not just this officer's placement, is it? Correct. There are two officers. Correct. There's an officer over by the rose bushes. Either officer can use force to protect the safety of the other officer, right? Correct. Not just themselves. Yes. Yes. If they perceive themselves to be in peril, their colleague to be in peril, or the public to be in peril. I mean, give it a minute. This is a confined space, right? Yes. It may be disputed exactly where each of them are. I don't see how it can be disputed that they're both in close proximity to the car. They are. At the time of the shooting, though, Deputy Collier is much farther from the car, right? He's eight to ten feet from the car, by his own admission, in his deposition. Eight to ten feet. Not that far. But even if he's further than his fellow officer, he can be protecting his fellow officer, too, right? He could be, but the officers were communicating. He heard Hart yelling during that time. There's no testimony that Hart was saying, he's coming at me, or something like that. What does that have to do with anything? I mean, once the deceased has escalated the situation by turning on the engine and putting it into gear, next move is going to be the car is going somewhere. What does it matter? They're both in close proximity. He's the furthest away, we'll say. Eight to ten feet. That's not very far. That's a lot closer than you are to me. True. I would say, you know, the fact of escalation is a disputed fact, as well, right? I mean, if he was going in reverse to retreat, then it's not an act of aggression towards the officers. Turning on the car and putting it in gear is not escalation? Excuse me? Turning it on and putting it into gear is not reasonably perceived as escalation? It could be. If we assume that it's a dangerous weapon, the car is a dangerous weapon, turning it on and putting it in gear, turning on a dangerous weapon and putting it in gear, that's escalation, isn't it? It adds complication to the situation, but it could be reversed. I'm not clear if escalation, it's escalating something, right? They're coming here to execute a search warrant, to arrest some people, and they're making it more difficult, and something is being escalated. But it sounds, from the record, we're not sure in which direction. Is it escalating the difficulty of making the arrest because they're trying to flee, or escalating in the way that they're actually attacking the police officers? And I just want to be clear that even in that scenario, it's still not clear what the escalation might be leading to. Correct. Yeah, but a reasonable officer could perceive that one of the things it could be leading to is movement that puts their safety in peril. Yes. And if at all feasible, they are supposed to warn before shooting, right? My next question is, so now we're talking about the officer's response, and it does seem it would be reasonable for the officers to respond in some way. What does the law tell us about the scope of that response? Because in this case, you get two shots through the truck, and the person is dead. Correct. So could he yell, turn the truck off? Could he unholster his gun and point it? That's the warning in a lot of your cases, right? Get gun out, point it at driver. Driver is on notice now that things are really about to escalate. Yeah, but in Davis v. Waller, we said officers are required to give a warning before using deadly force if a warning is feasible. The critical inquiry is feasibility. Yes. If the feasibility requirement is not an inflexible rule, then in order to avoid civil liability, an officer must always warn a suspect before firing, particularly where such a warning might easily have cost the officer his life. And here, I would say- We have a rapid escalation, a very dangerous situation back here. I would say the officer is eight to 10 feet from the truck, he has junk all around the truck, that makes it difficult for the truck to get up close to that porch and house, right? In this scenario, I would think saying, turn off the truck, is not infeasible. Well, but I think, if I understood Judge Branch's point, is what you just described might make it more dangerous for the police officers. I mean, where are they supposed to go? Where is this truck going to go? The place is crowded. The picture you're painting, I think that it could have been reasonable, perhaps, for the officer to be concerned about where the escalation was headed. And so, my question in making those statements is, why is this still a case that should go before a jury or go to trial, as opposed to resolution at summary judgment? Because the facts are so disputed, in particular, the movement fact, and the placement of where the officer was. Suppose we give you movement, the truck didn't move, the truck is in gear, if we're working with you on that fact, that's what I'm still struggling with. I think you still have a rapidly escalating situation, you have a dark yard, the obstacles that you view as causing your client to not want to hit things, I think, puts the officers in extreme peril, because he could ram the objects, pinning them. I don't know where they're supposed to go for safety. Well, I mean, I recognize the court has not adopted an officer created dangerous situation rule, and the Supreme Court has not ruled on that yet either, but I think Chief Judge Pryor was sort of mentioning this at the beginning, they chose to go into this situation that they had vetted. I mean, he looked in the backyard before going in there, and I think, you know, they must have determined they could safely be in there. We're in qualified immunity land, so whatever, the officer has to be . . . the facts, like most favorable to your client, have to be such that what the officer did was a clearly established violation of the Fourth Amendment. In so far, as the court hasn't addressed something, I don't know how that's going to ever help you. And I understand that, Your Honor. We would say it was clearly established in Morton, Vaughn, and Garner that where there isn't this hyper-dangerous set of background facts, right? No one has shot someone, there wasn't a high-speed chase, there wasn't a threat of a gun put to an officer's head. Well, Morton, though, I thought they put their hands up to surrender, or what was the scenario? Yes, the individual, you know, was in a park, his car was parked at the time that the officers came in, he slowly is proceeding out of the park, and he . . . it sounds like he accidentally put the car in reverse when he was getting out of the car. And there was an officer in front of him, directly in front of him, that he was not aware of. All right, Ms. Richardson, you've gone over a couple and a half minutes in response to our questions. So, I think we need to wrap it up. Ms. Yarbrough, you've saved some time for rebuttal. I would just submit briefly that this is the fact pattern and the type of case that qualified immunity was designed to protect officers when they face these uncertain situations, when they're put into mere seconds of making a decision that they perceive as life or death in a reasonable situation based on executing their legal authority by serving warrants. This court has previously held that even if an officer reasonably but mistakenly believes that one of the facts relevant to the merits of the constitutional excessive force claim is present, the officer is justified in using more force than, in fact, may have been necessary. And I would submit to this court that that is what Deputy Collier did in this case. And for those reasons, he should be entitled to qualified immunity. And I would respectfully request this court reverse the district court and grant qualified immunity to Deputy Collier. Okay. Thank you for your time. Thank you. Thank you for returning some time. We're going to be in recess until tomorrow.